KELLY vs. ISRAEL and others.

THE SAME vs. THOMPSON and others.

THE SAME vs. THOMPSON and ISRAEL and others.

Where a decree of foreclosure and sale of mortgaged premises is made, a junior mortgagee who is a party to the foreclosure suit, and who is interested in the proceeds which are to arise from the sale, or any other party to the suit who is interested in having the mortgaged premises sold under the decree without delay, may apply to the court to commit the prosecution of the decree to him, if the complainant neglects to proceed to a sale with due diligence.

And if the decree has been placed in the hands of a master to be executed, the court, upon the application of a party who is interested in having the sale made, may direct the master to proceed and execute the decree, by a sale of the premises, without delay, notwithstanding any directions such master may receive to the contrary from the complainant or his solicitor.

Where a decree of sale is placed in the hands of a master to be executed, it is the duty of the master, without any further order of the court for that purpose, to proceed to a sale of the property with all reasonable diligence, if he is requested to do so, by any of the parties to the suit who will be injured by a delay in making the sale.

The master, in the exercise of a sound discretion, may adjourn the sale to a future day, when a sufficient reason is shown for such adjournment.

Where notice of the sale of mortgaged premises, under a decree of foreclosure, is discontinued, by the direction of the complainant, and without the consent of the other parties to the suit who are interested in the proceeds of the sale, the extra expense occasioned by the discontinuance of the first notice of sale, ought not to be paid out of the proceeds of a sale subsequently made by the master, to the injury of the other parties interested in such proceeds.

A party to a decree, or order, who has parted with all his interest in the subject matter thereof, and who cannot therefore be injured by such decree or order, cannot appeal therefrom.

Whether a purchaser, pendente lite, of the equity of redemption in mortgaged premises, or of a junior incumbrance on the premises, from a party to the suit, can be heard in relation to the time or manner of selling the premises, under a decree of foreclosure, without making himself a party to the suit by a supplemental bill ? Quære.

The mere consent of a party in interest, who is not a party to the suit, and whose interest in the mortgaged premises is not affected by the decree of foreclosure, to come in and be bound by the decree, in the same manner as if he was a party to the suit, is not sufficient to authorize him to interfere in such suit.

Kelly v. Israel.

THESE cases came before the chancellor upon the separate appeals of the complainant, and of the defendant W. S. Warwick, from two orders of the vice chancellor of the first circuit; the one made in the two first of the above causes, and the other in the last cause. On the 18th of January, 1827, W. Israel and wife, being the owners of three parcels of land containing together about 376 acres, mortgaged the same to the executors and executrix of J. Thompson deceased, to secure the payment of $12,000; which mortgage was afterwards assigned to the complainant. Israel and wife conveyed these three parcels of land to J. Thompson, one of the defendants in the two last of the above causes. J. Thompson mortgaged the three parcels of land, together with another parcel adjoining the same, containing about ten acres, on the 8th of November, 1832, to J. Tallmadge, to secure the payment of $8000 with interest; which last mentioned mortgage was also assigned to the complainant. On the 15th of August, 1837, J. Thompson also mortgaged these four parcels of land, together with two other parcels—the one containing four acres and the other forty-three acres—to W. P. Hallett, to secure the payment of $5800 and interest; which last mentioned mortgage was assigned by Hallett to the defendant C. Sagory, for the benefit of himself and his copartner, L. Rogers. And Thompson and wife, on the first of May, 1839, conveyed the whole six parcels of land to W. S. Warwick, subject to the payment of these three mortgages. In October, 1839, Warwick and wife mortgaged the whole six parcels to his brother A. Warwick, to secure the payment of $12,000 and interest; and in March, 1840, W. S. Warwick again mortgaged the premises to secure the payment of $20,000, to Rogers & Sagory. W. S. Warwick subsequently failed, and assigned his interest in the premises, to W. B. Platt, as trustee, for the benefit of his creditors. In October, 1841, W. Kelly, a brother of the complainant, made a verbal agreement with Rogers, acting for himself and his copartner, to purchase the mortgaged premises for the sum of $42,500, to be paid when a good title to the premises should be procured by them. In November, 1841, Kelly obtained from Platt, the assignee of W. S. Warwick, a conveyance of the equity of re-

demption subject to the various incumbrances thereon, for the consideration of $100, and went into possession of the premises. Various negotiations then took place between him and Rogers & Sagory, with a view to have the verbal agreement between them reduced to the form of a written contract; but they could not agree upon the terms and conditions of the contract; a difficulty having arisen between the holders of the two last mortgages, as to which was entitled to priority. In December, 1841, W. Kelly conveyed the equity of redemption to C. J. Cauldwell, for the consideration of $200, but continued in possession of the premises. On the 7th of February, 1842, Rogers & Sagory filed a bill to foreclose their mortgage of $5800, which had been assigned to them by Hallett. On the 26th of January, 1842, and before the commencement of either of the above suits, Rogers & Sagory borrowed of V. De Launay $25,000; and as security for the payment of that loan assigned to him their $20,000 mortgage; but that assignment was not recorded until the month of July in that year. In February, 1842, the complainant, J. Kelly, filed separate bills before the vice chancellor of the first circuit, in the two first of the above causes, to foreclose the two mortgages of January, 1827, and of November, 1832; and the mortgagors in those mortgages respectively, and Rogers & Sagory who then held the third mortgage and had an interest in the fifth, and the holder of the fourth mortgage, and W. S. Warwick the mortgagor in that mortgage, and the owner of the equity of redemption, and W. Kelly the person in possession, were made parties. But the complainant, being ignorant of the assignment of the $20,000 mortgage to De Launay as security for the loan made by him, the latter was not made a party. In April, 1842, Rogers & Sagory sold and assigned their mortgage, of $5800, to the complainant, and discontinued their suit brought to foreclose the same. In May thereafter the complainant filed his bill, in the third of the above entitled causes, before the chancellor, to foreclose the mortgage so assigned to him. The usual decrees of foreclosure and sale were obtained in the two first causes in October, 1842, and in the last cause in March, 1843. The

mortgaged premises described in the respective mortgages fore-closed, were advertised to be sold under the several decrees on the 25th of January, 1844. At the time and place appointed for the sale the solicitor for the complainant and W. Kelly attended ; and Sagory also attended, prepared to bid at the sale. But the master, at the request of the complainant's solicitor, ad-journed the sale to the 4th of April. And about the last of March the notices of the sales were discontinued without the consent either of the defendants Rogers & Sagory, or of Thomp-son the mortgagor, who was personally liable for the deficiency if any there should be, in the proceeds of the sale, to satisfy the second and third mortgages. De Launay thereupon tendered, or offered to pay, to the complainant, the full amount of the three decrees, with interest and costs, upon condition that the latter would assign the decrees to him ; which offer was declined.

Rogers & Sagory and De Launay, thereupon, presented a petition to the chancellor, in the last of the above causes, praying that the complainant might be required to proceed to the sale of the mortgaged premises, under the decree in that cause ; or that he should be directed to assign the decree to De Launay, on payment of the amount due, with interest to the time of the tender, and the taxable costs, exclusive of master's fees upon the notices of sale which had been discontinued ; or in case a sale should not be ordered, or the decree assigned, that a receiver of the mortgaged premises might be appointed, or that the decrees might be vacated, so that the petitioners might be enabled to foreclose their $20,000 mortgage without embarrassment ; or for such other relief as might be just and proper. This petition was referred by the chancellor to the vice chancellor of the first circuit, for hearing and decision, at his next motion day, without further notice. A notice was also given by the solicitor of the defendant Thompson, that he would move for the granting of the prayer of the petition. The solicitors of the defendants Rogers & Sagory also gave no-tice, in the two first suits, that a motion would be made for the same relief, substantially, as was asked for in the prayer of the petition in the last cause, or for the other special relief stated in the

notice.　Upon the hearing of these applications, before the vice chancellor, they were opposed not only by the complainant, but also by the counsel for the defendant W. S. Warwick, and by the counsel for F. W. Clagget, who claimed an interest in the fourth mortgage.　And the vice chancellor thereupon made an order in the two first causes, and a separate order in the last cause, in substance that the defendants, Thompson, and Rogers & Sagory, or either of them, or the petitioner, De Launay, might pay into court the amount of the several decrees, with interest, and the complainant's taxed costs, unless the complainant should before such payment elect to receive the same himself; and that the party making such payment to the clerk of the court, or to the complainant, should be at liberty to proceed under the decrees respectively, for his own use and benefit, as if the same were assigned to him; and might cause the premises to be sold by a master; and that the master pay to him or his solicitor the amount due to the complainant, with interest and such taxed costs, instead of paying the same to the complainant or his solicitor; but that the master should in all other respects observe the directions of the decrees; that no part of the master's fees or disbursements, or expenses of publication, or of attendance or postponement upon the former notice of sale, should be charged upon the petitioners or paid out of the proceeds of the sale; and that the costs of the petitioners respectively should be paid out of the surplus proceeds of the sales.　In the order made in the last cause, the vice chancellor also directed that such parts of the mortgaged premises as were embraced in the other two decrees, respectively, should be sold subject to the lien of such decrees.　But no direction was made in either order, requiring the payment of the surplus proceeds upon the subsequent sale under the decrees upon the mortgages having a priority, to be paid to the person who should have become the purchaser under the decree in the last entitled cause.　Nor was there any direction, that the sale under the decree in the second cause, of the part of the premises embraced in the first mortgage, should be sold subject to the lien of the decree in the first cause; or any direction as to the order in which the sales under the several decrees should be made.

Upon the argument of the appeal, the chancellor suggested that as the respondent, De Launay, had not been made a party to the foreclosure suits, and as the assignment had, in fact, been made to him, before the filing of the several bills, it might be doubtful whether his equity of redemption would be barred, so as to give him any interest in the proeeeds of the sale, or so as to give the purchasers under the decrees a good title as against him. His counsel thereupon procured from him a written stipulation, which was filed, consenting to be bound by the decree in the last cause, in the same manner as if he had been made a defendant in the suit, and with the same rights in the surplus proceeds as if he had been a party.

*J. Rhoades*, for the appellant W. S. Warwick.

*E. Sandford* and *M. S. Bidwell*, for R. Kelly.

*F. B. Cutting*, for the respondents.

THE CHANCELLOR. The objection that W. S. Warwick has no interest in the subject matter of these orders, and has therefore no right to appeal, appears to be well taken. He has been discharged under the bankrupt act, as charged in the petition and not denied. And before his discharge he had conveyed all his interest in the equity of redemption to a trustee, for the benefit of his creditors, which interest has long since been sold by the trustee. He is, therefore, attempting to interfere in a matter, in which he has no interest whatever. His appeal must accordingly be dismissed, with costs to the respondents, to be taxed.

The question whether the assignee pendente lite of an interest in the equity of redemption, or of a junior incumbrance thereon, can be heard in relation to the time or manner of selling the mortgaged premises, under a decree of foreclosure, without the delay and expense of making himself a party to the suit by a supplemental bill, does not arise here. For if the statements in the petition are true, the interest of De Launay accrued before the filing of the complainant's bill in either of these causes;

and a mere consent, of a party not affected by the decree, to come in and be bound by such decree, is not of itself sufficient to authorize him to interfere in the suit. So much of the order, therefore, as gives him the right to pay the money into court and to have the benefit of the decree, is erroneous.

Rogers & Sagory, however, are parties to the suit; and they have an interest in the surplus proceeds of the sale sufficient to authorize them to interfere, notwithstanding they have pledged their $20,000 mortgage to De Launay as security for the loan from him. For the loss, if any, in the collection of that mortgage, must eventually fall upon them. The delay in selling under the decree, and suffering the interest to accumulate while the rents and profits of the mortgaged premises were being received and appropriated by other persons to their own use, was not only unjust as to Rogers & Sagory as junior incumbrancers, or as having an interest in the collection of this junior mortgage, but it also endangered the rights of Thompson, who is personally liable for any deficiency there may be, in the proceeds of the sales, to satisfy the second and third mortgages. Where property, against which there has been a decree of foreclosure, is thus situated, the complainant has no right to suspend the execution of the decree, in which execution other parties are interested. And if the complainant neglects to proceed to a sale with due diligence, the court, upon the application of any other party interested in the execution of the decree, will commit the prosecution thereof to him; or if the decree has already been placed in the hands of a master to be executed, will direct him to proceed to a sale, without delay, notwithstanding any directions he may receive to the contrary from the complainant or his solicitor. Indeed it is the duty of the master, without any special order of the court for that purpose, to proceed to a sale of the property with all reasonable diligence, if requested to do so, by any party to the suit who must necessarily be injured, by the delay, if the sale is stayed without a sufficient cause.

In this case, the circumstances in which the complainant's solicitor was placed, by W. Kelly's declining to bid on the property, after his interviews with Sagory and Mr. Argenti, and by

the absence of his client, and the want of instructions how to act in such a contingency, was sufficient to justify the master, in the exercise of a sound discretion, to postpone the sale for a reasonable time; to enable the solicitor to communicate with his client. And if the master had proceeded to sell the property on the day to which the sale stood adjourned, the extra costs of the master, occasioned by such adjournment, should have been allowed.

But no sufficient excuse is given for the subsequent abandonment of the notice of sale; leaving the owner of the equity of redemption to enjoy the use of the property for an indefinite period, at the expense of the holders of the junior incumbrances. It was also jeoparding the rights of Thompson, who was personally liable to the complainant for the deficiency in the proceeds of the sale, if any there should be, to pay the second and third mortgages and the accumulating interest thereon. The proceedings under the decree should not have been abandoned, without the assent of the defendant Thompson, and of the junior incumbrancers who had an interest in having the property sold with the least possible delay. And as the expense of advertising, and of the other proceedings of the master in part execution of the decrees for the sale of the mortgaged premises, which had already been incurred, were rendered entirely useless by such discontinuance of the notices of sale, and as the whole expense must be again incurred in the execution of the decrees, I think the vice chancellor was right in refusing to subject the surplus proceeds of the sale to a double charge for master's fees and expenses of advertising, &c.

The proper relief to be given upon the petition and notice, however, was to direct the master to proceed and sell the property without delay; and if necessary, a receiver of the rents and profits of the premises in the meantime might have been appointed. As some parts of the premises were to be sold under three separate and distinct decrees, it was proper to give such directions to the master, as to the manner of selling, as to prevent a sacrifice of the property. But in the manner in which these orders are drawn up, there may be difficulties in the exe-

cution of the decrees which the vice chancellor does not appear to have anticipated. For if the premises included in the first mortgage should be put up and sold, under the decree founded on that mortgage, the surplus must, as the decree and orders now stand, be brought into court to abide the litigation among the subsequent incumbrancers; and it cannot be applied by the master to the satisfaction of the decrees on the second and third mortgages, without the expense and delay of a new application to the court for that purpose. And if that part of the premises should be first sold under the decree upon the third mortgage, the same might be immediately put up and sold again under the decrees upon the prior mortgages. To prevent any difficulties of that kind, but. one order should be entered, in all three of the suits, directing the master as to the manner of selling and applying the proceeds to satisfy all the decrees; without the expense of bringing that part of the proceeds into court.

The orders appealed from must be reversed, without costs to either party upon the appeal of the complainant. And an order must be entered entitled in all three of these causes, directing the master who was originally charged with the execution of the decrees, to proceed to advertise and sell the whole premises embraced in the third mortgage, under the decree upon that mortgage, and on the usual notice of sale; that he sell the same in parcels, if in his opinion it can be done without diminishing the value; if that cannot be done, then that he sell the whole together; that the purchaser take the premises discharged of the claim of any of the parties to this suit, under the decrees upon the prior mortgages; and also discharged of all equity of redemption on the part of Victor De Launay, according to his stipulation filed in the third of the above causes, in the same manner as if he were a party to the suit, and with the same right to the said De Launay to the surplus proceeds of the sale as if he had been made such party in regard to his subsequent incumbrance; that the master, out of the proceeds of such sale, pay first to the complainant or his solicitor, the amount reported due in the first of the above causes, with interest, and the costs as already taxed,

and the master's fees, commissions and expenses, other than the fees, expenses and commissions upon the notice which was discontinued ; that he then pay the amount of the debt, interest, costs, and master's fees and commissions as aforesaid in the second of the above causes; that he then pay to the defendants Thompson and Rogers & Sagory, or to their solicitors, their taxable costs upon their petition and motion to the chancellor and to the vice chancellor, but not upon this appeal; that he bring the residue of such proceeds into court in the last entitled cause, and deposit the same with the assistant register, to abide the further order of the court ; and that the decree in the last entitled cause be carried into full effect in all other respects. And when the surplus money shall have been paid into court, the said Victor De Launay may obtain an order of reference as to such surplus, in conformity with the 136th rule of this court, in the same manner as if he had been made a defendant in the suit; and if an order is obtained by any other person, De Launay must be permitted to attend the reference and claim such surplus, in the same manner and with the like effect as if he was a defendant and had appeared in the suit by his solicitor. The master who is charged with the sale of the premises must proceed immediately to a sale, as soon as the necessary notices can be given, and must not adjourn the sale without the consent of all parties who claim an interest in the proceeds of such sale.