## COWING *vs.* GREENE AND HOWARD.

Whenever it appears in the proceedings in a case that absent parties, who should have been made defendants, have by stipulation consented to be bound by the judgment, and relinquished all title and claim to the subject matter of the action, the court is at liberty to go on, without their presence, to final judgment, as against the defendants named in the pleadings.

A judgment debtor may come in and become bound by the decree, where the action seeks to reach property held in trust for him by others.

In an action brought by a judgment creditor, to reach and apply on his judgment, moneys and property of the judgment debtors alleged to be in the hands of their attorney and another person, and to be by them fraudulently withheld from the judgment debtors and their creditors, one of the judgment debtors is not disqualified as a witness, on the ground that the action is prosecuted for his immediate benefit; the benefit to him, in case of a recovery, being *mediate*, that is, through the medium of another—the receiver—and by indirection, in the payment of his debts; not *immediate*, by putting into his hands or power the very proceeds of the recovery.

The property of a principal or client, in the hands of an attorney or agent, is, in legal contemplation, in the possession of the principal. It may therefore be reached and applied to the payment of the debts of the principal or client, by any process that acquires his title.

If the relation of attorney and client, or principal and agent, be established, and the possession of the property be shown in the attorney or agent, it lies not in his mouth to attack the source of his principal's title, or dispute the obligation to surrender it to the creditors of the latter, on any ground that his principal, if himself actually possessed of the property, could not urge.

Where the relation of attorney and client exists, no infraction or evasion of its obligations can avail to vest the attorney with any right, interest or property which his duty requires him to seek or secure for his client. An attorney can not acquire for himself, as against his client, any greater right by the violation of his duty than by the performance of it.

Where an attorney has in his hands, or in the hands of another, with notice of the rights of judgment creditors, property of judgment debtors, his clients, which he has acquired in his capacity as attorney, or in violation of his duties as such, a court of equity will, at the suit of the judgment creditors, enforce the peculiar trust which the law raises upon such a state of facts.

A party receiving a conveyance under and in execution of an agreement between others, which is in equity for the benefit of third parties, with notice, or charged with the duty of inquiry, must be held to take subject to all the rights of such third parties, or their creditors.

THIS was an action brought by the plaintiff as a judgment creditor of Joy & Webster, to reach and apply on his judgment certain moneys and property of Joy & Webster,

alleged to be in the hands of their attorney, and of a party co-operating in bad faith with him, and by them to be fraudulently withheld from Joy & Webster and their creditors, in violation of the trust and duty of such attorney. The case was referred to referees, who reported in favor of the plaintiff; and from the judgment entered upon their report, the defendants appealed to the general term.

*H. W. Rogers, John L. Talcott,* and *N. Hill, Jr.* for the appellants.

*T. C. Welch* and *E. W. Stoughton,* for the respondent.

*By the Court,* DAVIS, P. J. The objection that Joy & Webster were not made parties to this action can not now be made by the defendants. Every fact to show the propriety or necessity of making them parties, distinctly appeared upon the face of the complaint. It was the duty of the defendants to have demurred for defect of parties. (*Code,* § 144.) Not having done so, the defendants have waived the objection and can not be allowed to insist upon it here. (*Code,* § 148.) The defendants must be regarded as having expressly consented to waive this objection, and ought not to be heard at all upon it except as *amici curiæ.*

It is the duty of the court, therefore, to proceed to the determination of the merits of the case, if it can be done, "without prejudice to the rights of others, or by saving their rights;" but if a complete determination of the controversy can not be had without the presence of other parties, the court must cause them to be brought in. (*Code,* § 122.) The only authority the court possesses in this contingency is to "*cause them*" (the other parties) to be *brought in,* and for this purpose either to make the necessary amendment by adding those parties with their assent, or to order the cause to stand over for the purpose of bringing them in. By the 173d section of the Code, the court may, before or after

Cowing *v.* Greene.

judgment, and on such terms as may be proper, amend any pleading or proceeding by adding or striking out the name of any party, &c.; and the 174th section, in still broader terms, declares that whenever any proceeding taken by a party fails to conform in any respect to the provisions of the Code, the court may permit an amendment of such proceedings so as to make it conformable thereto. I have no doubt the court has power, in the present stage of this action, to amend the pleadings and proceedings by adding the names of Joy & Webster with their assent, and am strongly inclined to think it ought to be done upon what is now before us. The defendants would be in no sense prejudiced by allowing it.

The evidence of each of the defendants is fully before us. It was taken without exclusion of any part, and without objection, except the general one made on the argument and overruled by the referees; and although the referees received the evidence of each defendant on behalf of the other only, we are at liberty to give the evidence of each full effect in his own behalf, if the rules for the examination of parties established by the Code require it, which can hardly be claimed.

The referees received in evidence and acted upon the instrument executed and acknowledged by both Joy & Webster and entitled in this cause, relinquishing to the plaintiff all their rights to the subject matter of the action, and stipulating and agreeing to be bound by the judgment in this action. It was a matter of discretion with the referees whether to receive this instrument or not. It did not affect the merits of the issues in any degree, and I see no right in the defendants to object to it, *so far as its effect upon the simple question of parties is concerned.*

Undoubtedly Joy & Webster might have come in by stipulation and consented to be made parties, and that the complaint be taken *pro confesso* as against them, and the present defendants would not have been heard to object. No change in the issues would be produced, no additional allegations required, and the simple adding of their names would be all

the court would be called upon to perform. Such a course would not be without precedent under the less flexible practice of the Court of Chancery. In *White* v. *Hall*, (1 *Russ. and Mylne*, 332,) a party was permitted to intervene as a defendant after the cause had been heard on further directions, he submitting to be bound by the previous proceedings, the court saying there was no objection to placing him, as to future proceedings, in the same situation as if he had been a party from the first. *Pitt* v. *Brewster*, (1 *Dick.* 37; *Bannister* v. *Way*, (2 *id.*) and other cases were relied upon as authority for this course.

It seems to me the legitimate effect of the stipulation is precisely the same as the consent to be made a party in the cases cited. Joy & Webster relinquish to the plaintiff what he would get if they were parties, all their right, title, claim and interest, in the subject matter of this action, and "*stipulate and agree to be bound by the judgment in this action.*" This is fully equivalent to an express consent to every step necessary to *make them bound by the judgment*, and I would have had no hesitation at special term, in allowing the plaintiff to insert their names on filing this stipulation, duly proved as it is, and taking such order as would give full effect as against them to the judgment that might be rendered; and it seems to me the court, under the ample powers conferred by the Code, may still do this, *nunc pro tunc* if necessary, to prevent a failure of justice for want of necessary parties. (*Code, ub. sup. and* § 176.)

But if Joy & Webster can not thus be made parties by amendment, it becomes material to inquire whether it appears to the court, in this case, that a complete determination of the controversey can not be had without them *as parties.* It must be seen that the *controversy between the parties already in, can not be completely determined*, before we arrest a case to secure the presence of others. Not that the controversy that might arise with the new parties on the issues, as they might be changed by bringing in new parties,

but that the controversy now actually existing without them, can not be determined. It is obvious that the court should require a plain case, where the defendants have themselves waived all right to object, before, of its own motion, it steps in to demand the presence of other parties; and I am of opinion that when it appears in the proceedings in the case, that the absent parties, who should have been defendants only, have by stipulation consented to be bound by the judgment, and relinquished all title and claim in the subject matter of the action, the court is at liberty to go on without their presence to final judgment, as against the defendants named in the pleadings. This course is not without analogous action on the part of the court, which should be regarded as a precedent. In *Harvey* v. *Cooke*, (3 *Russ.* 34,) a defect of parties was cured at the hearing by the undertaking of the plaintiff to give effect to the utmost rights which the absent party could have claimed, those rights being such as did not affect the rights of the defendants. This case is at least authority for the action of the court in respect to absent defendants upon matters *dehors* the record; and it was in a case where the defendants probably might have urged their absence as an objection, which the defendants in this case, as we have seen, are not at liberty to do. In *Kelly* v. *Israel*, (11 *Paige*, 147,) De Launay had not been made a party to several foreclosure suits in which he with others were asking the aid of the court, to enforce the decrees, by requiring the complainant to proceed to a sale, or to assign the decrees on receiving the amounts due thereon. De Launay was the assignee of a mortgage assigned to him before the commencement of the suits; and on the suggestion of the Chancellor, that it might be doubtful whether his equity of redemption would be barred by the decrees, his counsel procured from him a written stipulation, which was filed, consenting to be bound by the decree in the last of the three causes, in the same manner as if he had been made a defendant in the suit. The Chancellor held that the mere

consent of a party not affected by the decree to come in and be bound by such decree, is not of itself sufficient to authorize him to interfere in the suit; but in disposing of the appeal, he directed an order to be entered in the causes requiring the master to proceed to sell the premises, and directing, amongst other things, that the purchaser take the premises discharged of all equity of redemption on the part of De Launay, "according to his stipulation filed in the third of the above causes, in the same manner as if he was a party to the suit, and with the same right to De Launay to the surplus proceeds of the sale as if he had been made such party in regard to his subsequent incumbrance;" thus, in effect, holding that the absent party could not come in on his mere stipulation, and assume an offensive or active attitude in the cause, as against the other parties, they objecting, but might in that manner bind himself as a passive defendant, by the decree already taken and the proceedings yet to be had in the causes; and the Chancellor went further and gave to De Launay the right to become an actor in respect to the surplus, precisely as if made a defendant to the original actions, and appearing therein by solicitor.

It is not easy to perceive why the same practice should not allow a judgment debtor to come in and become bound by the decree, where the action seeks to reach property held in trust for him by others. For instance, if the bill be filed against a general assignee to reach the assigned property and apply it on judgments against the assignor—if the latter be not a party, but shall stipulate in the action to be bound by the judgment and proceeding therein—why would not the assignee be protected by a judgment based upon and reciting the stipulation, as the order in *Kelly* v. *Israel* did? And if the stipulation is filed with and made part of the roll, why is it not a complete estoppel upon the party making it, so as to be used as a bar to any claim he could subsequently institute against the assignee?

But the precise point to be determined is, whether the

controversy between the *present parties* can be completely determined as the case now stands; and the bearing of the stipulation on this question is, it seems to me, when taken in connection with the defendants' legal waiver of the making of Joy & Webster parties, sufficient to warrant the court in disposing of the case on its merits, and so framing the decree, if for the plaintiff, that the stipulation in the cause will protect the defendants, and foreclose all equities of the parties making it.

It is objected by the defendants that the referees erred in receiving the testimony of Walter Joy as a witness, on the ground that the action is prosecuted for his immediate benefit. To sustain this objection, the defendants rely on the case of *Vanduzen* v. *Worrell*, (18 *Barb.* 409.) That case is distinguishable from this in its facts, so far as that the moneys for which the action was brought were already adjudged to be applied, when recovered, to the judgment against the defendant, in which the supplementary proceedings wherein the plaintiff was appointed receiver, were had. But the Court of Appeals have in effect overruled that case, and established a test of immediate benefit which is to govern all cases of this character. The conflict of views in this court in the various districts, and between this court and the Superior Court of the city of New York, ought, it seems to me, to be regarded as definitely disposed of by the court of last resort, to whose decision we are all equally bound to defer. The whole question turns on the force of the word "immediate." In *Washington Bank* v. *Palmer*, (2 *Sandf.* 688,) the court held in effect that to render the witness the person for whose immediate benefit the action is prosecuted, *the money recovered must go directly into his hands as his property.* In *Bank of Charleston* v. *Emeric & Davenne*, (*Id.* 718,) the defendant Davenne was primarily liable for the debt. He was called by the plaintiff against his co-defendant and objected to as incompetent. It is clear the recovery would directly apply to pay his debt, but the court said he was not the person for whose im-

mediate benefit the suit was prosecuted, within the meaning of section 399 of the Code, and that that section applies only to a person into whose hands the money collected in the suit will necessarily go when it is received, or who might take it from the sheriff or attorney as his own. In *Treeman* v. *Spalding*, (2 *Kern.* 373,) Ruggles, J. quotes and adopts this language, and adds, " it does not apply when the money can not immediately, although it may ultimately, go into his hands." I refer to the language of those cases, because they are cited and approved by the learned judge who pronounced the opinion of the Court of Appeals in what I regard as the controlling case. In *Butler* v. *Patterson*, (3 *Kern.* 292,) the meaning of the section of the Code in question is definitely established. " We must recur," says Denio, J. " to the word immediate, and endeavor to ascertain its meaning in the connection in which it is used, and I think it may safely be affirmed that an action can not be said to be prosecuted for the immediate benefit of a person unless such person would have a right to the amount recovered, or some portion of it, as soon as it shall be recovered by the nominal plaintiff. It should at least be a case where he could maintain an action against such nominal plaintiff for money had and received by him to the witness' use. I do not say that every such case would be within the exception, but I am confident that unless the witness' connection with the cause of action will entitle him to bring such a suit as soon as the nominal plaintiff has collected the money, he is not disqualified by the provision under consideration."

Within this rule the cases relied on by the defendants can not, in my judgment, be upheld, nor can the defendant Joy be justly claimed to have had a disqualifying interest. The recovery, if any, must go into the hands of a receiver, to be by him applied to the payment of the costs of the proceedings and the judgments mentioned in the complaint, in which event Joy would doubtless be benefited by the payment of his debts, but never upon a *dollar of the money can he lay*

Cowing *v.* Greene.

*his hands,* nor under any circumstances could he maintain for it an action for money had and received to his use, against the receiver, or the plaintiff, or any person.

The benefit to him, if a recovery be had, is *mediate,* that is, through the medium of another, and by indirection in the payment of his debts; not *immediate* by putting into his hands or power the very proceeds of the recovery. Joy was therefore a competent witness.

The letters of Walter Joy to Greene, and of Greene to Joy, dated respectively, December 20, 1852, December 24, 1852, and December 27, 1852, were not admissible against the defendant Howard. Greene had no power to make admissions binding upon Howard, at that time. There seems however to be no substantial objection to their admissibility against Greene, and the objection taken by the defendants at folio 408 of the case is insufficient to make their admission erroneous even as against Howard. The objection there stated is that they were "inadmissible against either defendant," and such an objection is not well taken if the letters could be received for any purpose *against either.* But if we consider them properly objected to by Howard, there is nothing in the case to show that they were received, as against him, by the referees, and nothing in the letters would indicate that they must necessarily have prejudiced him. It was the duty of the defendant Howard to have presented his separate objection, and to have had the referees pass distinctly on the question of the admissibility of those letters against him, so that the court could now see that he was, or might have been, prejudiced by the decision.

As to the correspondence of the parties prior to the agreement between Greene and Howard, in December, 1850, they were, it seems to me, admissible against both the parties, as tending to establish the relation of attorney and client between Greene and Joy & Webster, upon the existence of which relation the rights of the plaintiff against both defendants must depend. As part of the *res gestæ,* they are to be

regarded as acts, not as admissions, and as they precede the agreement between Howard and Greene, on which the former relies, it is not apparent that they should have been rejected as against Howard; but if this position be not sound, as respects all or any part of them, the same answer may be made that applies to the letters of 1852: that the objection was not sufficiently definite, and that it does not distinctly appear that the referees received the letters, or to what extent they received them, if at all, as against the defendant Howard.

That they were proper evidence against Greene, there seems no reason to doubt. Hence it was the duty of the other defendant to make his objection, and obtain the decision of the referees, in such form that we could clearly see the error of which he now complains.

Upon the merits of this case, I propose to do little more than to state the conclusions to which my mind has been led by a careful and anxious study of the evidence, and to indicate briefly the legal principles upon which I suppose those conclusions may be vindicated. My brother Marvin has elaborately examined and carefully analyzed the evidence, and with the result of his labors, and with the manner in which they have been performed, I am entirely content. In its true theory, this action is brought by the plaintiff, as a judgment creditor of Joy & Webster, to reach and apply on his judgment certain moneys and property of the latter alleged to be in the hands of their attorney, and of a party co-operating in bad faith with him, and by them to be fraudulently withheld from Joy & Webster and their creditors, in violation of the trust and duty of such attorney. It is not essential here to discuss the relations between attorney and client, and the duties which the former owes to the latter. The experience of centuries illustrates the sacredness of their character, and teaches the importance of maintaining and enforcing them with unshrinking firmness. In our own country, where the well being of society depends so largely upon the integrity of the legal profession, the duty to *com-*

Cowing *v.* Greene.

*mand* it, which courts owe to the public, to the bar, and to themselves, is too obvious to suffer comment.

The property of a principal or client, in the hands of an attorney or agent, is, in legal contemplation, in the possession of the principal. It may, therefore, be reached and applied to the payment of the debts of the principal or client, by any process that acquires his title. If the relation of attorney and client, or principal and agent, be established, and the· possession of the property be shown in him, it lies not in the mouth of the agent or attorney to attack the source of his principal's title, or dispute the obligation to surrender it to his creditors, on any ground that his principal, if himself actually possessed of the property, could not urge. The attorney may, of course, deny and litigate the existence of the relation, or, conceding that, may vindicate his lien, and defend his possession so far as to secure the lien, but, beyond these, his very identity as agent is in complete legal absorption with his principal. The statute of uses and trusts has no application whatever to this relation, nor to the rights and duties springing out of it. It depends upon no statute for its existence, but rests upon principles more stable than statutes, in accordance with which its duties and obligations are enforced.

In the view which I have taken of this case we are, therefore, not encumbered with the consideration of the statute of uses and trusts, nor of the statute of frauds, which has been so ably and elaborately pressed upon us by the appellant's counsel. We have to enquire, only, whether the attorney of Joy & Webster has in his hands, or in the hands of another, with notice of their rights, property which he has acquired in that capacity, or in violation of his duties as such attorney ; and discovering this to be so, to enforce the peculiar trust which the law raises upon such a state of facts, in favor of the creditors of his clients. If Joy & Webster were the actual possessors of this property, having received it through Greene, who, as their attorney, had successfully

defended the state mortgage in the name of Hosea Webster, and as the result of their "expectations and confidence" in him, or of some arrangement made with Hosea by their attorney, could they be heard to allege the objections now urged by Greene as to the character of the arrangement with Hosea; as to the validity of the trust while the property was in his hands, the non-existence of written evidence of the arrangement, the indefinite nature of the hope or expectation of his generosity or justice, or the effects of the transaction as a fraud upon their general creditors? All these objections would be answered by the fact that the arrangement, whatever it was, had been executed, and that the property in Joy & Webster's hands, which was the fruit of it, is a fund out of which their creditors are entitled to be paid. And the same answer is applicable with equal force, when once it is established, that the property is in the hands of their attorney.

I regard it also as a sound principle that an attorney can acquire for himself, as against his client, no greater right by the violation of his duty than by the performance of it. Where the relation exists, no infraction or evasion of its obligations can avail to vest the attorney with any right, interest or property which his duty required him to seek or secure for his client.

Whatever doubts might, under other circumstances, be entertained, we must assume, for the purposes of this case, that the defense of the state mortgage was a valid and lawful one. The assignee of Joy & Webster, in the exercise of his discretion, acting under the advice of his counsel, had concluded that the defense could not be sustained, and that it was his duty to abandon it rather than incur further expense. We have no right to consider his motives in coming to this conclusion any otherwise than pure and proper. It was his duty then, if opportunity offered, to realize for his trust as much as practicable for the equity of redemption then in his hands, and nothing appears to show that in the view he entertained of the defense, the sale at $1000 was not a proper one.

Cowing v. Greene.

In this state of facts, if Joy & Webster, having confidence in their counsel, and believing the defense a substantial one, and becoming satisfied that it would be abandoned by the assignee, should take steps to ensure the making of the defense and the application of the property to the payment of their debts through the instrumentality of some judgment creditor, who was or could be placed in a situation to urge the defense, it is not easy to see what just ground of complaint the creditors whom the assignee represented could have against that course. Nor is it perceived that there is any thing unlawful in their retaining an attorney and counsel to pursue the necessary steps to attain that object. Hosea Webster was a creditor who was then, or could be put in the necessary position to make the defense. He was a large judgment creditor of Joy & Webster. He was a brother of one and a relative of the other, and likely to feel a personal interest in their being relieved from their heavy indebtedness. If the property passed into his hands, at worst it would probably operate to extinguish his demands, and they had that degree of confidence in him to "hope and expect" that he would allow some portion of it to be used in the discharge or compromise of their other indebtedness. The referees have found that they employed the defendant Greene, as their attorney, to accomplish this object, satisfied that its accomplishment would enure in some form to their benefit, and that Greene undertook, in that capacity, to do this in their behalf. Without reviewing here the evidence on which it is based, it is sufficient to say that I am satisfied with the finding, and that this undertaking of Greene carried with it and impressed upon him, as between Joy & Webster and himself, all the obligations and duties of attorney and client.

It is palpable that Hosea Webster was not willing to risk or incur the expense of this defense. He was without confidence in it, and was entirely willing to make such arrangements as would give him a chance to have its benefits without incurring its hazards. The steps that put him in a

position to defend beneficially to himself, had been taken by Greene without his consent or knowledge, and as the referees find, upon the retainer of Joy & Webster. What arrangements could the attorney thus situated make in respect to the subject of the litigation for his private benefit in hostility to the interests of the clients who had retained him to manage it? Certainly none. What if their expectation and confidence in the benefits to be realized were vague, ill-defined, and possibly barren? Does this authorize their attorney, employed and undertaking to do that which might perhaps bring them to fruition to thwart and defeat them for his private gain? Is not the fact that the attorney could and did enter into an agreement to secure to himself two thirds of the property at stake, the best possible illustration that the expectation and confidence of his clients in Hosea Webster were not misplaced, and that a faithful discharge of his duty might have secured to them or their creditors the benefits which its violation bargained for himself? It seems indeed an ungracious answer to say, that possibly Hosea Webster might in the end have disappointed their confidence, and that therefore the attorney could anticipate the contingency by disappointing it himself. His duty would have been discharged when he had carried the defense to a successful issue, and thus placed in the hands of Hosea Webster the fruits of the litigation. No responsibility would rest upon him if Hosea should subsequently defeat the expectation of his clients; nor was it important for him to enquire or know whether their expectation could be lawfully enforced by action or not. That risk was upon his clients, not upon him, and when he should have achieved the end for which he was retained, his responsibility would have terminated, however sorely disappointed the hopes of his clients might have proved to have been.

. The agreement into which Greene entered with Hosea Webster was to secure a conveyance to himself of two thirds of the property, after a successful termination of the suit.

By such a determination of the suit with the state, the property would be fully vested in Hosea Webster. Thus far the result would accord with the retainer; but the very object of the retainer was to give Joy & Webster, through their other creditors, the benefit of whatever arrangement could be made with Hosea Webster. Greene's employment, if any there were, *was precisely in hac re.* An arrangement was made in advance with Hosea Webster, to be consummated at the conclusion of the action. It provided for the conveyance to the attorney, or on his appointment, of two thirds of the property. It is not expressed that this conveyance is to be for the benefit of his clients; or that they or their creditors are to be the appointed grantees, but the law supplies this omission, and does for the attorney and his agreement precisely what his retainer required him to do.

For the expenses of the litigation which he was employed to conduct in the name of Hosea Webster, those who employed him were of course responsible. He had the right to look to Joy & Webster for them; and the arrangement which relieves Hosea from all cost and charges, therefore militates nothing against Greene's relation to Joy & Webster. What of benefit he took under the agreement was for *them;* what of liability he incurred, was that already existing against them by reason of their retainer of him, and for which he was entitled to be indemnified.

My conclusion from these views is that Greene, upon entering into the agreement with Hosea Webster, became *eo instanti* a trustee for Joy & Webster and their creditors, of all rights and benefits secured by the agreement, and that, as to any interest that he subsequently acquired in the property, the same relation continues to exist.

The referees have found that the defendant Howard took the conveyance of the property from Hosea Webster, "with notice of the adverse claims of Joy & Webster, and of the plaintiff, to two thirds thereof." The agreement into which he entered with Greene in December, 1850, after the agree-

ment between the latter and Hosea Webster, was in writing, and is now lost. It stipulated, in substance, according to the testimony of Greene, that Howard's interest, in case of success, should be half of Greene's interest, " or one third of the whole," on condition " that he should pay the money necessary to be paid, and assume the liabilities." This contract was executory merely, and gave no present interest in the property to Howard. Whether it was champertous, and for that reason void, it is not necessary to inquire. It is enough that, before it was executed by a conveyance to Howard of the lands, he had notice of the adverse claims. But it is insisted that the finding of the referee, that Howard had notice, is not supported by the evidence. The testimony of Hosea Webster and of Latimer is, in my judgment, quite sufficient to warrant this finding. If they do not establish that Howard was fully advised of the relation between Greene and Joy & Webster, their evidence is at least sufficient to show that he had notice, which would charge him with the duty of inquiring, and, when that duty exists, the law, in the absence of proof to the contrary, presumes inquiry to have been made, and charges the party upon whom the duty rests with a knowledge of all the facts that the inquiry, if made, would have revealed to him. (*Palmer* v. *Yates,* 3 *Sandf.* 138.)

If the position be sound, then, that the agreement between Hosea Webster and Greene was, in equity, for the benefit of Joy & Webster, a party who received a conveyance under and in execution of that agreement, with notice, or charged with the duty of inquiry, must be held to take, subject to all the rights of Joy & Webster and their creditors. But it is claimed, on behalf of the defendant Howard, that he was an actual purchaser of the whole of the property from Hosea Webster, and that the alleged trust in Hosea being illegal, he had a lawful right to sell and convey the whole to whomsoever he chose. The facts of the case, it seems to me, do not warrant this assumption. Hosea Webster did not sell, nor

pretend to sell, any thing more than "his one third of the premises." Whatever he did beyond that was simply in execution of the agreement between himself and Greene. He conveyed to Howard, by Greene's appointment, the two thirds, in accordance with his agreement, and the fact that he sold the remaining one third to Howard, and conveyed it also by the same instrument, does not change the character of the act. It is neither contradicting the deed, nor changing its effect, to show that, as to the two thirds, the consideration was in fact the performance by Hosea of his obligations to Greene.

The referees have found that there was no sufficient evidence of the payment by Howard to Greene of any consideration for the agreement to share the property with him. This finding, it should be borne in mind, is based upon the evidence taken upon the trial, and, since the referees had refused to open the case on the merits, it was probably correct not to consider the proof as to the payment of the $1000, afterwards taken on the accounting. It does not seem, to my mind, material to inquire whether the referees were correct in their views of the evidence on this subject, as, in my judgment, the payment of that sum would not, under the circumstances, entitle Howard to a performance of the agreement with Greene, as against the rights of Joy & Webster and their creditors, he having had notice of those rights before the actual conveyance. His remedy would be in another form, in which, if his contract were a lawful one, he might recover the money paid; or he can be fully protected, as to that sum, in the accounting to be had in this action.

It is my opinion that the judgment in this action ought to be affirmed, with such modifications as will protect the rights of the defendants, as between themselves, as to the extent for which each is bound to account to the receiver, and with such further provisions, as to Joy & Webster, as shall insert their names as parties to the action, or give effect to the stipulation to be bound by the judgment.

The judgment entered in accordance with this opinion was affirmed by the Court of Appeals at the December term, 1864. No opinion was written in that court.

[ERIE GENERAL TERM, February 14, 1859. *Davis, Marvin* and *Greene,* Justices.]